[Cite as *In re C.W.*, 2023-Ohio-3182.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF C.W.

:
:
:    C.A. No. 2023-CA-13
:
:    Trial Court Case No. 20131573
:
:    (Appeal from Common Pleas Court-
:    Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on September 8, 2023

. . . . . . . . . . .

TRAVIS KANE, Attorney for Appellant, Father

LOUIS A. ZAMBELLI, III, Attorney for Appellee, Clark County Department of Job and Family Services

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Father appeals from the trial court's judgment terminating his parental rights and awarding appellee Clark County Department of Job and Family Services (CCDJFS) permanent custody of his minor child.

{¶ 2} Father challenges the trial court's determination that awarding CCDJFS permanent custody was in the child's best interest and that the child could not be reunited

with him within a reasonable time. Alternatively, Father argues that the trial court should have awarded legal custody to his own mother.

{¶ 3} We conclude that the trial court's permanent-custody findings were supported by the requisite clear and convincing evidence. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} C.W. was born to Mother and Father in 2009. The child was adjudicated dependent in 2013 at age four. That case was resolved in 2015 with an award of joint custody to Father and another adult caregiver.

{¶ 5} CCDJFS filed a second dependency complaint in January 2021. The trial court adjudicated the child dependent in March 2021 based on physical abuse that occurred while the child was in Father's care. The dependency order included a finding that the adult caregiver who previously had joint custody with Father had stopped caring for the child shortly after the joint-custody order's issuance. CCDJFS then obtained temporary legal custody of the child in April 2021. CCDJFS placed the child in foster care and created case plans for Father and Mother. A case plan later was created for the paternal grandmother.

{¶ 6} In December 2021, CCDJFS moved to modify disposition to an award of permanent custody to the agency. Resolution of the motion was delayed for various reasons, and CCDJFS filed another permanent-custody motion in July 2022 while the earlier one remained pending. Thereafter, in September 2022, Father moved for an award of legal custody to paternal grandmother. The matter proceeded to a January 9, 2023

evidentiary hearing. The only witnesses were three representatives of CCDJFS. Father, Mother, and the paternal grandmother did not testify at the hearing or call any witnesses.

{¶ 7} Following the hearing, the trial court filed a March 1, 2023 judgment entry terminating Father's and Mother's parental rights, overruling Father's motion for legal custody to paternal grandmother, and awarding CCDJFS permanent custody of C.W. This appeal by Father followed.

## II. Analysis

{¶ 8} A trial court's decision to terminate parental rights and grant permanent custody to an agency of the State must be supported by clear and convincing evidence. *In re L.C.*, 2d Dist. Clark No. 2010-CA-90, 2011-Ohio-2066, ¶ 14. Clear and convincing evidence is evidence which will produce in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). The evidence must be more than a preponderance, but it need not rise to the level of certainty that is required beyond a reasonable doubt in criminal cases. *Id.*

{¶ 9} In reviewing a permanent-custody decision, "we apply an abuse-of-discretion standard, and we will not disturb such a decision on evidentiary grounds 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.' " *In the Matter of T.S.*, 2017-Ohio-482, 85 N.E.3d 225, ¶ 6 (2d Dist.), citing *In re L.C.* at ¶ 14. The phrase "abuse of discretion" implies a decision which is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217,

219, 450 N.E.2d 1140 (1983).

{¶ 10} As pertinent here, the trial court applied R.C. 2151.414(B), which provides criteria for awarding permanent custody, and found by clear and convincing evidence (1) that Mother had abandoned C.W., (2) that the child could not be placed with Father within a reasonable time, and (3) that an award of permanent custody to CCDJFS was in the child's best interest. In making these determinations, the trial court applied R.C. 2151.011(C), which pertains to abandonment. It also applied R.C. 2151.414(E), which provides guidelines for determining whether a child can be placed with a parent within a reasonable time. Finally, the trial court applied R.C. 2151.414(D), which sets forth factors for determining whether an award of permanent custody is in a child's best interest.

{¶ 11} With regard to Mother and Father, the trial court reasoned:

The clear and convincing evidence supports a finding that [Mother] has abandoned the [child] as set forth in R.C. 2151.414(B)(1)(b) and defined in 2151.011(C). [Mother] has not had contact with CW in over ninety days despite having opportunity to visit with him at the Visitation Center. Additionally, [Mother] has not been able to secure safe and stable housing, obtain employment, obtain a drug and alcohol assessment and follow all recommendations, and has tested positive on at least four occasions for illegal drug use.

The clear and convincing evidence supports a finding that the child cannot safely be placed with [Father] within a reasonable period of time as set forth in R.C. 2151.414(B)(1)(a). The Court has reviewed all the factors

set forth in R.C. 2151.414(E) in making this finding. Specifically, a reasonable Case Plan was developed by CCDJFS, and included [Father] and certain objectives for him to meet. CCDJFS regularly reviewed the Case Plan and its objectives with [Father]. [Father] has not been able to secure safe and stable housing. [Father] has tested positive for cocaine recently. The clear and credible evidence presented supports that [Father] has met some of the Case Plan objectives, but has not substantially met other of the Case Plan objectives despite the reasonable and diligent efforts of CCDJFS to assist in addressing the issues that caused CW's removal. Specifically, [Father] has failed to secure safe and stable housing, find employment and submit to random drug screens with CCDJFS. There are no services requested by [Father] that were not provided.

Despite the reasonable efforts of CCDJFS, neither parent has been able to rectify the issues that caused the children's removal.

CCDJFS scheduled monthly meetings with [Mother] and efforts were made to contact her via cell phone, but communication with [Mother] was a challenge. [Mother] would fail to appear for scheduled meetings or respond to the case worker or GAL. Referrals were provided by CCDJFS to [Mother] for housing, but [Mother] failed to follow through with the referrals. CCDJFS provided links to local services to [Mother]. Neither parent requested any additional services to assist them in rectifying the reasons for the [child's] removal.

March 1, 2023 Judgment Entry, p. 11.

{¶ 12} With regard to Father's request for an award of legal custody to his own mother, the trial court reasoned:

CCDJFS made reasonable efforts to locate kinship placements including discussing various kinship possibilities with [Mother] and attempting to do so with [Father]. CCDJFS added [paternal grandmother] to the Case Plan, but she has not shown a clear and consistent commitment to parent CW. [Paternal grandmother] had not had contact with CW for over 2 years according to the Case Plan. She had opportunity to step in as a placement for CW at the onset of the case and did not. At the eleventh hour, she indicated that she would be a placement for CW, but then declined when she learned of the requirements necessary to have visits in her home. [Paternal grandmother] then changed her mind again, but then took several weeks to follow through with CCDJFS requests. The Court concurs with Caseworker Dahlstrom's assessment that if [paternal grandmother] received legal custody, she would return CW to [Father] once CCDJFS closed their case. This would not be in CW's best interest due to the ongoing concerns listed above.

*Id.* at p. 11-12.

{¶ 13} Finally, the trial court addressed the statutory best-interest factors that it found applicable, reasoning:

Pursuant to R.C. 2151.414(D), the court must also find by clear and convincing evidence that the permanent custody placement is in the [child's]

best interests.

Interactions and Interrelationships. [Mother] has not visited with CW at the Visitation Center. [Father] has visited with CW at the Visitation Center. He has never had approved unsupervised visits outside the Visitation Center since CW's removal. CW has a relationship with his paternal grandmother * * * and visits with her and [Father] once per week at the Visitation Center. Prior to the supervised visits, [paternal grandmother] had not had contact with CW in over two years according to the Case Plan approved and filed on December 14, 2022.

Wishes of the Children. CW was interviewed by the Court on February 3, 2023. CW expressed his wishes to the Court. The Court will note that CW lacked the mental capacity and maturity to understand the implications of his wishes. The GAL recommended the [child] be placed in the permanent custody of CCDJFS.

Custodial History. CW has been in [Father's] custody much of his [life]. CW was previously removed from his parents' care due to dependency issues and placed with a kinship provider * * *. [The kinship provider] and [Father] entered into a shared parenting agreement, but [the kinship provider] quickly disengaged from CW and the case plan. CW was removed again from [Father] in January, 2021 and placed in the interim temporary custody of CCDJFS. Since then, CW has been in the custody of CCDJFS and placed in a foster home.

Need for a Legally Secure Placement. [Mother] and [Father] have failed to rectify the issues that caused the removal of the [child] despite reasonable efforts on behalf of CCDJFS to assist her. This is CW's second removal from his parents in his short life. [CW has] been in foster placement since January, 2021 waiting for [Mother] and [Father] to rectify their issues. CW is in need of a legally secure placement.

By clear and convincing evidence it is in the best interests of CW to be placed in the permanent custody of CCDJFS.

*Id.* at 12.

{¶ 14} On appeal, Father challenges the trial court's findings that C.W. could not be returned to him within a reasonable time and that an award of permanent custody to CCDJFS was in the child's best interest. He argues that he was "substantially compliant with the majority" of his case-plan objectives. Father asserts that he had completed a drug and alcohol assessment, as well as a psychological assessment, and had followed up with recommended treatment. He stresses the existence of negative drug tests and a caseworker's expression of no concerns regarding drug use. Father also notes that he visited C.W. consistently and that those visits went well.

{¶ 15} Alternatively, Father contends the trial court erred in not awarding legal custody to C.W.'s paternal grandmother. Father notes that paternal grandmother had visited the child, that there was no evidence of any concerns about paternal grandmother or her husband, and that CCDJFS had completed a home study for paternal grandmother. While admitting that paternal grandmother became involved "late in the case," Father asserts that no valid reason existed for not awarding her legal custody.

{¶ 16} Upon review, we see no error in the trial court's permanent-custody decision. As a preliminary matter, we note that Father, Mother, and paternal grandmother did not testify at the permanent-custody hearing. The only witnesses were representatives of CCDJFS. At the conclusion of the hearing, neither Mother nor Father suggested that custody should be returned to them or that CCDJFS should retain temporary custody while they pursued their case plans. Instead, the attorneys representing Mother and Father both requested an award of legal custody to paternal grandmother. *See* Hearing Transcript, p. 105-106.

{¶ 17} The record contains clear and convincing evidence, however, supporting the trial court's finding that C.W. could not be returned to Father within a reasonable time and that an award of permanent custody to CCDJFS was in the child's best interest.[1] Although Father had satisfied or made progress on some of case-plan objectives, he lacked employment or evidence of adequate government assistance at the time of the permanent-custody hearing. He also still lacked suitable housing. A representative of CCDJFS was able to view Father's residence only one time early in the case. On that occasion, the caseworker observed holes in the floor and a non-functioning sink. According to the caseworker, Father later reported that the house faced potential condemnation. On subsequent occasions, Father refused to allow caseworkers to see

---

[1] At the time of CCDJFS' second permanent-custody motion in July 2022, it appears that C.W., who went into the agency's temporary custody in April 2021, had been in temporary custody for 12 or more months of a consecutive 22-month period. Under R.C. 2151.414(B)(1)(d), that fact combined with a best-interest finding would have justified awarding CCDJFS permanent custody, without the need for an additional finding under R.C. 2151.414(B)(1)(a) that C.W. could not be placed with Father within a reasonable time. Nevertheless, we will address Father's argument about the child's being placed with him because the trial court made a finding on the issue.

where he lived. At the time of the hearing, no one from CCDJFS had been inside Father's current home. In addition, even though one CCDJFS caseworker expressed no concern about on-going drug use by Father, a supervisor for the agency stated that she still had concerns, as Father had tested positive for cocaine within the previous six or seven months.

{¶ 18} Although Father has not challenged the trial court's findings regarding Mother, we note that she too lacked adequate housing or income at the time of the permanent-custody hearing. CCDJFS had no evidence of her being employed or receiving sufficient government assistance. Mother resided in a studio apartment with another person. During a visit there, a caseworker saw roaches climbing all over the walls, counters, and stovetop in the kitchen. Mother's home was characterized as being unsafe for C.W. Mother also continued to test positive for drugs, failed to complete and follow through with assessments, and failed to visit C.W. Her failure to have any contact with the child was the basis for the trial court's abandonment finding.

{¶ 19} Finally, the record contains clear and convincing evidence that it was in C.W.'s best interest to award CCDJFS permanent custody and not to award paternal grandmother legal custody. The record supports the trial court's analysis of the statutory best-interest factors, and Father's appellate brief does not challenge that analysis beyond asserting that paternal grandmother would be a suitable legal custodian.

{¶ 20} The most detailed testimony about paternal grandmother's involvement came from caseworker Ashley Dahlstrom. She had been assigned to C.W.'s case in September or October 2022. Shortly after receiving the case, Dahlstrom spoke with

paternal grandmother about being a placement option. According to Dahlstrom, paternal grandmother initially was not interested in complying with various requirements, which included meeting with the guardian ad litem and meeting with a "parent aide" who would supervise visits in grandmother's home. Thereafter, in November 2022, paternal grandmother changed her mind and completed paperwork to begin the parent-aide referral process. Dahlstrom made a referral but to her knowledge paternal grandmother did not follow through. Dahlstrom testified that paternal grandmother had declined her phone calls and had not returned any of them. In Dahlstrom's opinion, paternal grandmother had not effectively "participated" with CCDJFS.

{¶ 21} Although a home study had been completed for paternal grandmother, her lack of consistent engagement with the agency hindered her ability to move forward with both in-home visitation and potentially obtaining legal custody of C.W. CCDJFS supervisor Tori Lemaster testified that the proposed parent aide had not been able to make contact with paternal grandmother, meaning that C.W. had not been able to have visits in her home and CCDJFS had not been able to observe how paternal grandmother would parent the child, who had a history of cognitive deficiencies and behavioral issues. In recommending permanent custody to CCDJFS, the guardian ad litem also advised the trial court that paternal grandmother had refused to cooperate with or even speak to him. Finally, CCDJFS representatives Dahlstrom and Lemaster both expressed concern about paternal grandmother's having admitted that she would return C.W. to Father if she obtained legal custody.

## III. Conclusion

{¶ 22} Based on the reasoning set forth above, we conclude that the trial court's permanent-custody findings were supported by the requisite clear and convincing evidence. Accordingly, Father's assignment of error is overruled.

{¶ 23} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.